Jennifer L. Hess
Scott M. Riemer
RIEMER HESS LLC
Attorneys for Plaintiff
275 Madison Avenue, 26th Floor
New York, NY 10016
Phone:      (212) 297-0700
Fax:     (212) 297-0730
jhess@riemerhess.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA ISRAEL,<br><br>                              Plaintiffs,<br><br>          -against-<br><br>FIRST UNUM LIFE INSURANCE COMPANY and UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>                              Defendants. | Index No. 1:21-cv- 4335<br><br>**COMPLAINT**<br><br>ECF CASE |

Plaintiff Jessica Israel ("Israel"), by her attorneys Riemer Hess LLC, complaining of Defendants First Unum Life Insurance Company and Unum Life Insurance Company of America (together "Unum"), alleges:

1.       This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, *et seq.*, to recover disability benefits owed to Israel under her employer's long term disability employee benefit plan (the "Long Term Disability Plan" or "LTD Plan"), to recover benefits owed to Israel under her employer's life and accidental death and dismemberment employee benefit plan (the "Life Plan"), to clarify the rights of Israel to future benefits under such plans, and to recover attorneys' fees and costs.

1

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. Under Section 502(f) of ERISA, 29 U.S.C. § 1132(f), this Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3.  Venue is properly in this District pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the breaches took place in this District and Unum resides or may be found in this District.

## ISRAEL'S PARTICIPATION IN
## THE LONG TERM DISABILITY PLAN

4.  Israel last worked as a Vice President and Chief Administrative Officer for Steinreich Communications Group, Inc.

5.  As an employee at Steinreich Communications Group, Inc., Israel was provided with long term disability insurance coverage under the LTD Plan.

6.  Long term disability benefits under the LTD Plan have been insured in accordance and pursuant to Policy No. LTD 902146 002, issued by Unum.

7.  At all relevant times, Israel was and is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the LTD Plan.

8.  At all relevant times, the LTD Plan is and has been an "employee welfare benefit plan" within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

9.  At all relevant times, Unum is and has been the claims administrator of the LTD Plan within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

10. At all relevant times, Unum has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) with respect to the LTD Plan.

## ISRAEL'S PARTICIPATION IN
## THE LIFE PLAN

11. As an employee at Steinreich Communications Group, Inc., Israel was provided with life and accidental death and dismemberment insurance coverage under the Life Plan.

12. Benefits under the Life Plan have been insured in accordance and pursuant to Policy No. LTD 902146 003, issued by Unum.

13. At all relevant times, Israel was and is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Life Plan.

14. At all relevant times, the Life Plan is and has been an "employee welfare benefit plan" within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

15. At all relevant times, Unum is and has been the claims administrator of the Life Plan within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

16. At all relevant times, Unum has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) with respect to the Life Plan.

## STANDARD OF REVIEW

17. This matter is subject to a *de novo* review.

18. The LTD Plan document does not contain an effective grant of discretionary authority to Unum.

19. The Life Plan document does not contain an effective grant of discretionary authority to Unum.

20. Even if the LTD Plan or Life Plan documents effectively granted discretionary authority to Unum, this matter is still subject to a *de novo* review because Unum failed to comply with the Department of Labor's ("DOL") claims-procedure regulations.

21. Upon information and belief, Unum has not even adopted claims procedures in accordance with the DOL regulations.

22. Due to Unum's procedural violations, Unum forfeited its entitlement to any deference granted by the LTD and Life Plan document.

23. For these reasons, this case is subject to a *de novo* review.

## THE LONG TERM DISABILITY PLAN'S
## STANDARD OF DISABILITY

24. Under the LTD Plan, UNUM is obligated to provide Israel monthly long term disability benefits if she meets certain eligibility requirements, which include satisfying the LTD Plan's definition of "Disabled."

25. Under the LTD Plan, "Disabled" is defined as follows:

You are disabled when Unum determines that due to your sickness or injury:

1. You are unable to perform the material and substantial duties of your regular occupation and are not working in your regular occupation or any other occupation or,

2. You are unable to perform one or more of the material and substantial duties of your regular occupation, and you have a 20% or more loss in your indexed monthly earnings while working in your regular occupation or in any occupation.

You must be under the regular care of a physician in order to be considered disabled.

## THE LIFE PLAN'S
## STANDARD OF DISABILITY

26. Under the Life Plan, UNUM is obligated to continue coverage and waive Israel's premium requirements if she meets certain eligibility requirements, which include satisfying the Life Plan's definition of "Disabled."

27. Under the Life Plan, "Disabled" is defined as follows:

You are disabled when Unum determines that:
- during the elimination period, you are not working in any occupation due to your injury or sickness; and
- after the elimination period, due to the same injury or sickness, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by training, education or experience.

You must be under the regular care of a physician in order to be considered disabled.

4

## ISRAEL'S DISABILITY

28. Israel's career as an Assistant Vice President and Chief Administrative Officer for Steinreich Communications Group, Inc. was cut short on October 28, 2016, due to multiple medical conditions and symptoms which precluded her from performing her own occupation.

29. Since October 28, 2016, Israel has continuously been Disabled within the meaning of the LTD Plan.

30. Since October 28, 2016, Israel also has continuously been Disabled within the meaning of the Life Plan.

31. Israel's disability resulted from a combination of multiple medical conditions, which cause chronic, persistent, and severe abdominal and groin pain that radiates to her low back, as well as significant fatigue and recurrent fever. She also experiences urinary frequency, urgency, and pressure.

32. Israel's disabling medical conditions include the following, without limitation:

a. recurrent pyonephrosis;

b. hepatomegaly and benign hepatic cyst;

c. chronic non-alcoholic steatohepatitis (NASH);

d. calculus of kidney;

e. diabetes mellitus type II;

f. gross hematuria;

g. ureter obstruction;

h. severe abdominal and flank pain;

i. low back pain;

j. dysuria;

k. recurrent fever;

l. disorder of fatty-acid metabolism;

m. hyperlipidemia;

n. hypercalcemia;

o. anemia;

p. obesity;

q. autoimmune thyroiditis;

r. abnormal results of liver function studies;

s. neoplasm of uncertain behavior of liver, gallbladder, and bile ducts; and

t. status-post head injury with dizziness, headaches, nausea, and cognitive difficulties.

33. Israel's conditions have resulted in multiple hospitalizations and emergency department visits.

34. Israel has a significant history of painful and invasive treatment for her conditions, including: shockwave lithotripsy with ureteral stents; retrograde ureterak stent placement; ureteropscopy; and right oophorectomy/cystectomy. She also has undergone multiple biopsies of her liver and other internal organs.

35. Israel's symptoms have not been alleviated with medications and multiple surgical interventions.

36. Israel underwent a right oophorectomy/cystectomy in January 2016, which did not alleviate her symptomatology.

37. Israel underwent ureteroscopy with retrograde ureterak stent in April 2017, which did not alleviate her symptoms.

38. In a report dated June 12, 2017, Israel's longstanding internist, Bella Sandler, M.D., stated, "Despite Ms. Israel's history of surgical intervention, she continues to experience severe abdominal pain, low back pain, fatigue and urinary frequency and urgency."

39. In a report dated June 12, 2017, Dr. Sandler explained:

> Ms. Israel's symptoms limit her ability to maintain concentration and attention as well as limit her ability to perform any prolonged sitting, standing or walking greater than 30 minutes at one time. They also limit her ability to lift and carry any weight greater than 5 pounds. As a result, Ms. Israel is unable to tolerate an 8-hour workday and is totally disabled from performing any occupation for which she is reasonably qualified.

40. In September 2017, Israel sustained a fall and suffered a new head injury with loss of consciousness, which necessitated a craniotomy due to intracerebral bleeding.

41. Following her head injury, Israel developed headaches, nausea, dizziness, and cognitive difficulties.

42. Following her head injury, Israel also developed persistent numbness, tingling in her left forearm, hands and weakness in her upper extremities.

43. The symptoms resulting from Israel's head injury further erode her functional capacity.

44. Israel has not experienced any significant improvement in her medical conditions and functional limitations from October 28, 2016 to date.

45. As a result of her combined medical conditions and symptoms, Israel remains incapable of performing the material and substantial duties of her regular occupation from October 28, 2016 to date.

46. As a result of her medical conditions and symptoms, Israel remains incapable of performing the duties of any gainful occupation for which she is reasonably fitted by training, education or experience from October 28, 2016 to date.

47. As a result of her medical conditions and symptoms, Israel is incapable of performing the physical demands of sedentary work on a consistent, reliable, and sustained basis.

48. As a result of her medical conditions and symptoms, Israel is incapable of performing the cognitive demands of her regular occupation on a consistent, reliable, and sustained basis.

49. As a result of her medical conditions and symptoms, Israel is incapable of performing

the cognitive demands of any gainful occupation for which she is reasonably fitted by training, education or experience

50. Israel remains unable to sit for greater than 20 minutes at one time without needing to lie down.

51. Israel remains unable to perform prolonged standing and walking.

52. Israel remains unable to lift and carry sedentary loads.

53. Israel remains unable to lift and carry any weight greater than 5 lbs.

54. Israel requires more rest breaks than any employer would tolerate during an eight-hour day.

55. Israel is unable to maintain the attention and concentration required to perform high-level cognitive tasks.

56. Israel's fatigue and pain impact her ability to maintain a normal work schedule on a consistent, sustained, and reliable basis.

57. Israel remains under the appropriate care of physicians and other medical professionals for her medical conditions.

## THE SOCIAL SECURITY ADMINISTRATION APPROVED ISRAEL'S DISABILITY CLAIM

58. The Social Security Administration approved Israel's application for Social Security Disability Insurance benefits.

59. To date, the Social Security Administration continues to pay Israel Social Security Disability Insurance benefits.

## UNUM INITIALLY APPROVED ISRAEL'S DISABILITY CLAIMS

60. Israel applied to receive long term disability benefits under the LTD Plan, as well as waiver of premium benefits under the Life Plan, alleging she became Disabled within the meanings of

both plans as of October 28, 2016.

61. Unum initially approved Israel's claims for long term disability benefits and waiver of premium benefits effective October 28, 2016 – conceding that Israel satisfied the plans' respective standards of disability.

62. Unum paid long term disability benefits to Israel under the LTD Plan through at least May 14, 2018.

63. Unum provided waiver of premium benefits to Israel under the Life Plan through at least May 14, 2018.

## UNUM WRONGFULLY TERMINATED ISRAEL'S LONG TERM DISABILITY BENEFITS

64. Unum terminated Israel's long term disability benefits under the LTD Plan effective May 15, 2018.

65. Israel appealed Unum's long term disability benefit termination.

66. Unum considered the evidence Israel submitted following Unum's May 15, 2018 denial of her long term disability benefits.

67. By letter dated August 2, 2018, Unum informed Israel, "The new information received does not change our prior decision" with respect to the LTD Plan.

68. By letter dated August 2, 2018, Unum denied Israel's appeal of Unum's termination of benefits under the LTD Plan.

69. Israel exhausted all administrative remedies under the LTD Plan.

70. Unum's termination of Israel's long term disability benefits was incorrect, unsupported, and not based on substantial evidence.

71. Unum's termination of Israel's long term disability benefits was wrongful and without basis in law or fact.

72. Unum's termination of Israel's long term disability benefits was made against the substantial weight of the evidence and was arbitrary and capricious.

73. Unum's termination of Israel's long term disability benefits was contrary to the preponderance of the evidence.

74. With respect to Israel's long term disability benefit claim, Unum never availed itself of the right to conduct an in-person medical examination of Israel, and Unum's decisions were therefore based only on paper reviews, without the benefit of an actual clinical evaluation. This is particularly relevant given the complexity and recurrent, chronic nature of Israel's medical conditions.

75. Unum's failure to meaningfully consider Israel's medical evidence in connection with her long term disability claim is an indication that Unum was serving its own financial interests, despite its fiduciary obligations to Israel.

76. Unum and its reviewing medical consultants unreasonably cherry-picked from the evidence to support their conclusions with respect to Israel's long term disability claim.

77. In terminating Israel's long term disability benefits, Unum incorrectly relied on the reports of medical consultants who never examined Israel in-person.

78. With respect to Israel's long term disability claim, Unum's reliance on non-examining reports was unreasonable.

79. With respect to Israel's long term disability claim, the reports of Unum's non-examining reviewers are unreliable because:

a. Their opinions are infected by conflict of interest and bias;

b. Their conclusions lack foundation and are conclusory;

c. Their conclusions were inconsistent and ignored the weight of the evidence;

d. They never spoke with or examined Israel in-person;

e. They failed to consider Israel's subjective symptoms;

  f.  They conducted a selective review of the medical file;

  g.  They mischaracterized the medical evidence;

  h.  They failed to review all relevant medical evidence;

  i.  They failed to consider the relevant exertional and non-exertional demands of Israel's regular occupation;

  j.  They failed to consider the chronicity of Israel's conditions; and

  k.  They failed to consider the combined impact of Israel's medical conditions and symptoms on her functional capacity.

  80.  The evidence Unum cites in support of its adverse long term disability benefit determination is both inconsistent and self-serving. It does not meet the "substantial evidence" requirement of the Courts in ERISA litigation.

  81.  Unum failed to provide a full and fair review to Israel by failing to specify what information was necessary for her to perfect her appeal of Unum's long term disability termination.

  82.  With respect to Israel's long term disability benefit claim, Unum failed to provide a full and fair review by failing to appropriately consider the Social Security Administration's approval of Israel's disability benefits – which has a notably more stringent standard than that imposed by Unum.

  83.  Unum failed to provide a full and fair review of Israel's long term disability claim by failing to consider all available evidence.

  84.  Unum failed to provide a full and fair review of Israel's long term disability claim by failing to have an appropriate named fiduciary review Israel's appeal, who is neither the individual who made the adverse benefit determination, nor a subordinate of such individual.

## UNUM WRONGFULLY TERMINATED
## ISRAEL'S LIFE WAIVER OF PREMIUM BENEFITS

  85.  Unum terminated Israel's waiver of premium benefits under the Life Plan effective

May 15, 2018.

86. Israel appealed Unum's life waiver of premium benefit termination.

87. Unum considered the evidence Israel submitted following Unum's May 15, 2018 denial of her life waiver of premium benefits.

88. By letter dated August 2, 2018, Unum informed Israel, "The new information received does not change our prior decision" with respect to the Life Plan.

89. By letter dated August 2, 2018, Unum denied Israel's appeal of Unum's termination of benefits under the Life Plan.

90. Israel exhausted all administrative remedies under the Life Plan.

91. Unum's termination of Israel's life waiver of premium benefits was incorrect, unsupported, and not based on substantial evidence.

92. Unum's termination of Israel's life waiver of premium benefits was wrongful and without basis in law or fact.

93. Unum's termination of Israel's life waiver of premium benefits was made against the substantial weight of the evidence and was arbitrary and capricious.

94. Unum's termination of Israel's life waiver of premium benefits was contrary to the preponderance of the evidence.

95. With respect to Israel's life waiver of premium benefits, Unum never availed itself of the right to conduct an in-person medical examination of Israel, and Unum's decisions were therefore based only on paper reviews, without the benefit of an actual clinical evaluation. This is particularly relevant given the complexity and recurrent, chronic nature of Israel's medical conditions.

96. Unum's failure to meaningfully consider Israel's medical evidence in connection with her life waiver of premium claim is an indication that Unum was serving its own financial interests, despite its fiduciary obligations to Israel.

97. Unum and its reviewing medical consultants unreasonably cherry-picked from the evidence to support their conclusions with respect to Israel's life waiver of premium claim.

98. In terminating Israel's life waiver of premium benefits, Unum incorrectly relied on the reports of medical consultants who never examined Israel in-person.

99. With respect to Israel's life waiver of premium claim, Unum's reliance on non-examining reports was unreasonable.

100. With respect to Israel's life waiver of premium claim, the reports of Unum's non-examining reviewers are unreliable because:

a. Their opinions are infected by conflict of interest and bias;

b. Their conclusions lack foundation and are conclusory;

c. Their conclusions were inconsistent and ignored the weight of the evidence;

d. They never spoke with or examined Israel in-person;

e. They failed to consider Israel's subjective symptoms;

f. They conducted a selective review of the medical file;

g. They mischaracterized the medical evidence;

h. They failed to review all relevant medical evidence;

i. They failed to consider the relevant exertional and non-exertional demands of Israel's regular occupation;

j. They failed to consider the chronicity of Israel's conditions; and

k. They failed to consider the combined impact of Israel's medical conditions and symptoms on her functional capacity.

101. The evidence Unum cites in support of its adverse life waiver of premium benefit determination is both inconsistent and self-serving. It does not meet the "substantial evidence" requirement of the Courts in ERISA litigation.

102. Unum failed to provide a full and fair review to Israel by failing to specify what information was necessary for her to perfect her appeal of Unum's life waiver of premium termination.

103. With respect to Israel's life waiver of premium benefit claim, Unum failed to provide a full and fair review by failing to appropriately consider the Social Security Administration's approval of Israel's disability benefits – which has a notably more stringent standard than that posed by Unum.

104. Unum failed to provide a full and fair review of Israel's life waiver of premium claim by failing to consider all available evidence.

105. Unum failed to provide a full and fair review of Israel's life waiver of premium claim by failing to have an appropriate named fiduciary review Israel's appeal, who is neither the individual who made the adverse benefit determination, nor a subordinate of such individual

## UNUM'S CONFLICT OF INTEREST

106. At all relevant times, Unum has been operating under an inherent and structural conflict of interest because, on the one hand, Unum is liable for benefit payments due to Israel and, on the other hand, each payment issued depletes Unum's assets.

107. Unum's adverse determinations were influenced by its conflict of interest.

108. Unum's conflict of interest extended to and infected its non-examining medical consultants.

109. The medical consultants that Unum relied on to terminate Israel's benefits are not impartial physicians.

110. Upon information and belief, the medical consultants that Unum relied on to terminate Israel's benefits are each repeat players for insurers within the disability and life insurance industry.

111. Upon information and belief, the medical consultants that Unum relied on to terminate Israel's benefits have conducted reviews in connection with numerous other individuals

insured by Unum.

112. Upon information and belief, Unum relied on medical consultants that were in-house, salaried employees of Unum.

113. Upon information and belief, Unum relied on medical consultant contractors hired and/or retained by Unum, either directly or through a third-party vendor.

114. Unum works with its medical consultants based on their reputation for outcomes in contested cases and the likelihood of support for a claim denial.

115. Unum knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve insurance companies, rather than the individual claimants.

116. Upon information and belief, Unum pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for Unum's insureds.

117. Because the medical consultants derive substantial income from performing file reviews for Unum insureds, the medical consultants have an incentive to provide file reviews that Unum deems favorable in order to perform future file reviews for Unum.

118. Unum has failed to take active steps to reduce potential bias and to promote the accuracy of its benefit determinations.

## COUNT I (Benefits Under the LTD Plan)

119. Israel repeats and re-alleges the allegations set forth in paragraphs 1 through 118 above.

120. Unum had no legal basis for terminating Israel's long term disability benefits.

121. Under the terms of the LTD Plan, UNUM agreed to provide Israel with certain disability insurance benefits under the LTD Plan, in accordance with the terms and conditions set forth therein.

122. Unum has failed and refused to pay Israel the long term disability benefits to which she is rightfully entitled, from May 15, 2018 through the present date.

123. Israel has satisfied all conditions precedent under the LTD Plan and is thus eligible to receive benefits beyond May 14, 2018.

124. A "higher than marketplace" quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), applies to evaluating the actions of Unum with respect to the LTD Plan.

125. Unum was required to discharge its fiduciary duties "solely in the interests of the participants and beneficiaries" of the LTD Plan.

126. Unum violated the higher-than-marketplace standards that ERISA imposes on insurers for the LTD Plan.

127. Unum breached its fiduciary duty by failing to fairly review and reasonably interpret the reports prepared by Israel in connection with the LTD Plan.

128. Instead, Unum created a false rationale for terminating Israel's long term disability benefits.  Unum selectively highlighted certain factors in medical reports in order to cast a favorable light on its position while misinterpreting or ignoring the conclusions of Israel's treating providers about the conditions for which they rendered treatment/evaluation.

129. Unum placed its financial interests in reducing its expenses and increasing its profitability above Israel interests under the LTD Plan to receive ongoing disability benefits.

130. Israel has been forced to bring the instant action as a direct result of Unum's unlawful benefit denial and violations of the LTD Plan and ERISA.

131. Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), Israel is entitled to recover disability benefits under the LTD Plan that have not been paid to date, with interest, and those that will become due in the future.

**COUNT II (Attorney Fees and Costs for the LTD Plan)**

132. Israel repeats and re-alleges the allegations set forth in paragraphs 1 through 131 above.

133. By reason of Unum's failure to pay Israel benefits due under the terms of the LTD Plan, Israel has been forced to retain attorneys to recover such benefits, for which she has and will continue to incur attorneys' fees.

134. Israel is entitled to recover reasonable attorneys' fees and the costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

### COUNT III (Benefits Under the Life Plan)

135. Israel repeats and re-alleges the allegations set forth in paragraphs 1 through 134 above.

136. Unum had no legal basis for terminating Israel's waiver of premium benefits under the Life Plan.

137. Under the terms of the Life Plan, UNUM agreed to provide Israel with certain waiver of premium benefits in the event she became Disabled, in accordance with the terms and conditions set forth therein.

138. Unum has failed and refused to provide Israel the waiver of premium benefits to which she is rightfully entitled under the Life Plan, from May 15, 2018 through the present date.

139. Israel has satisfied all conditions precedent under the Life Plan and is thus eligible to receive waiver of premium benefits beyond May 14, 2018.

140. A "higher than marketplace" quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), applies to evaluating the actions of Unum with respect to the Life Plan.

141. Unum was required to discharge its fiduciary duties "solely in the interests of the participants and beneficiaries" of the Life Plan.

142. Unum violated the higher-than-marketplace standards that ERISA imposes on insurers for the Life Plan.

143. Unum breached its fiduciary duty by failing to fairly review and reasonably interpret the reports prepared by Israel in connection with the Life Plan.

144. Instead, Unum created a false rationale for terminating Israel's life waiver of premium benefits. Unum selectively highlighted certain factors in medical reports in order to cast a favorable light on its position while misinterpreting or ignoring the conclusions of Israel's treating providers about the conditions for which they rendered treatment/evaluation.

145. Unum placed its financial interests in reducing its expenses and increasing its profitability above Israel's interests under the Life Plan to receive ongoing disability benefits.

146. Israel has been forced to bring the instant action as a direct result of Unum's unlawful benefit denial and violations of the Life Plan and ERISA.

147. Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), Israel is entitled to have Unum reinstate her waive of premium benefits and coverage under the Life Plan.

### COUNT IV (Attorney Fees and Costs for the Life Plan)

148. Israel repeats and re-alleges the allegations set forth in paragraphs 1 through 147 above.

149. By reason of Unum's failure to provide Israel benefits due under the terms of the Life Plan, Israel has been forced to retain attorneys to recover such benefits, for which she has and will continue to incur attorneys' fees.

150. Israel is entitled to recover reasonable attorneys' fees and the costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

**WHEREEFORE**, Israel demands judgment against Unum:

A. For the amount of all long term disability benefits due under the terms of the LTD

Plan that have not been paid, together with interest thereon;

  B.  For the amount of all waiver of premium benefits due under the terms of the Life Plan that have not been paid, together with interest thereon;

  C.  Clarifying and declaring that the LTD Plan is obligated to pay Israel long term disability benefits in the future as required by the LTD Plan;

  D.  Clarifying and declaring that the Life Plan is obligated to provide Israel waiver of premium benefits and coverage in the future as required by the Life Plan;

  E.  For the costs of this action and Israel's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g)(1); and

  F.  For such other and further relief as may be deemed just and proper by the Court.

Dated:

New York, New York
May 13, 2021

            By: /s/ Scott M. Riemer
               Scott M. Riemer
               RIEMER HESS LLC
               Attorneys for Plaintiff
               275 Madison Avenue, 26th Floor
               New York, New York 10016
               (212) 297-0700
               jhess@riemerhess.com

            By: /s/ Jennifer L. Hess
               Jennifer L. Hess
               RIEMER HESS LLC
               Attorneys for Plaintiff
               275 Madison Avenue, 26th Floor
               New York, New York 10016
               (212) 297-0700
               jhess@riemerhess.com